# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

GREGORY PODURGIEL,

    *Plaintiff,*

    v.

ACME MARKETS, INC.,

    *Defendants.*

Civil Action No:
16-cv-02262 (PGS)(TJB)

**MEMORANDUM AND ORDER**

This matter comes before the Court on a motion for summary judgment brought by Defendant, Acme Markets, Inc. ("Acme") (ECF No. 45) and Plaintiff Gregory Podurgiel's motion for partial summary judgment. (ECF No. 49).

### I.

Plaintiff filed his Complaint against Acme on April 21, 2016 alleging Defendant's violation of the Family and Medical Leave Act ("FMLA") and the New Jersey Law Against Discrimination ("NJLAD"). Plaintiff avers in his Complaint that he was terminated from employment due to his disability, his need for accommodations for his disability, and/or for taking FMLA protected absences, in violation of the FMLA and NJLAD. (Complaint, ¶1).

Gregory Podurgiel (hereinafter "Plaintiff" or "Podurgiel") was hired by the Greater Atlantic and Pacific Tea Company (hereinafter "A&P") in 1999 as a butcher. (Deposition of Gregory Podurgiel (hereinafter Podurgiel Dep.) 9:3-14, attached hereto as Exhibit 1. Pl. SOF ¶1.)

1

Over the course of his employment, Plaintiff worked at several A&P grocery stores, and was a full-time employee at each store. (Podurgiel Dep. 12:16-13:2; SOF ¶2). Throughout the course of his employment with A&P, Plaintiff was a member of the United Food Commercial Workers Local 464A.

In 2014, Plaintiff began working at the grocery store located in Wall Township New Jersey (hereinafter the "Wall Township Store") where he remained until September 2015. Joan Perez was the store manager at the Wall Township store, and Ernest Lawrence (hereinafter "Ernie Lawrence") served as the Assistant Store Manager, or "co-manager."

During the 2015 calendar year, Plaintiff earned $47,354.37 in wages.

2015 Leave of Absence

Plaintiff suffers from chronic mastoiditis media in his right ear. In or around August 2015, Plaintiff's physician recommended that he undergo surgery to treat the same. Thereafter, Plaintiff notified both Store Manager Perez and Assistant Store Manager Lawrence of his medical condition and his need for leave in order to undergo surgery. (Pl. SOF ¶11).

On September 7, 2015, Plaintiff submitted a Family and Medical Leave Act (FMLA) Request Form that he had downloaded from the State of New Jersey website to A&P Human Resources. Plaintiff testified that he received oral confirmation that his request for leave was approved. (Podurgiel Dep. 21:16-23). Also, on September 7, 2018, Plaintiff submitted to A&P a New Jersey State Disability form completed by his physician, Dr. Laura Downey. Following his surgery, Plaintiff submitted a certification from his doctor verifying his medical condition, that he had undergone surgery, and confirming an anticipated leave of absence from September 8, 2015 until November 8, 2015. (Pl. SOF ¶15.) Following his surgery, Plaintiff required regular follow up with his surgeon for purposes of monitoring his condition. During a visit on October 26, 2015,

Plaintiff's physician identified an anticipated return to work date on November 9, 2016.  However, thereafter during a visit on November 9, 2015, Plaintiff's physician advised Plaintiff that he should remain out of work until November 16, 2015.  Accordingly Dr. Downey provided Plaintiff with a clearance to return to work on November 16, 2015.  According to Plaintiff, he handed a copy of his November 16, 2015 clearance to return to work to Assistant Store Manager Ernie Lawrence on November 9, 2015.

In mid-October, 2015, while out on medical leave, Acme, who acquired A&P, held an employee orientation for the Wall Township store employees in order to review the new Acme policies and procedures. (Lawrence Dep. at 19:5-21, attached as Exhibit 7. Pl. SOF ¶39).   Plaintiff was directed, by Store Manager Joan Perez, to participate in that employee orientation program at the Wall Township Grocery Store and attended. (Podurgiel Dep. at 32:10-14, 33:11-22) (See also Lawrence Dep. at 22:3-6 confirming Plaintiff's attendance at orientation). Pl. SOF ¶ 40).

Acme's Acquisition of A&P's Wall Township Store

During the time period when Plaintiff was out on medical leave, A&P declared bankruptcy. Following A&P's bankruptcy filing, Defendant Acme Markets submitted a bid to purchase 76 of A&P's stores, including the Wall Township store where Plaintiff was employed. On July 19, 2015, the agreement to transfer the ownership of 71 A&P stores, including the Wall Township store, to Acme stores was memorialized in an Asset Purchase Agreement (hereinafter "the Purchase Agreement"). Pursuant to the Purchase Agreement, Acme agreed to offer employment to all "covered employees" of A&P. (Purchase Agreement at Sec. 6.4 (ACME00052), attached as Exhibit 7. Pl. Opp. and Pl. SOF ¶25.)

According to Plaintiff, the Purchase Agreement defined "covered employees" as "an employee of A&P or any of its subsidiaries at the time of applicable closing, whose duties relate

primarily to the operation of any of the Stores, excluding any such employees who are on short-term disability, long-term disability or any other approved leave of absence as of the applicable Closing." Purchase Agreement at Section 1.1 (ACME 00011), attached as Exhibit 8 Pl. SOF ¶26

Following the execution of the Purchase Agreement, Defendant's agents visited all grocery stores Acme acquired via the purchase Agreement. (Dosenbach Deposition at 25:2-10, attached as Exhibit 2; Mitch Schafer Deposition (hereinafter "Schafer Deposition") at 23:15-21).   During these visits, Acme agents communicated to the store employees that they would become Acme associates. (Schafer Dep. at 23:15-21) Defendant also engaged in negotiations with unions when present at the stores they acquired. (Dosenbach Dep. at 20:17-20, 30:7-9; Pl. SOF ¶31.) Thereafter, Defendant entered into Memorandums of Understanding with said unions which set forth their agreements as related to the terms and conditions of employment between the union members and Defendant at each store.  In August, 2015, the Memorandum of Agreement between Acme and the Wall Township store union, identifies that Acme agreed to accept all wage, hour and terms and conditions of employment set forth in the previously negotiated collective bargaining agreement (CBA) between the Union and A&P.  (ECF No. 49-11)  That is, according to Plaintiff, the CBA entered into between A&P and the Union in November 2008 remained in effect at the Acme acquired the Wall Township store, and that all Wall Township employees who were in non-management positions under A&P were members of the Union.

Store Transition

Between November 3 and November 6, 2015, the Wall Township store underwent a three-day transition, and reopened to the public on November 6, 2015.

During the transition, the store's signage was changed from A&P to Acme, all A&P products were removed from the shelves; new cash registers and computers were installed.  In

4

addition, Acme implemented a different merchandizing strategy that included larger produce, bakery, and floral departments.  Acme canceled A&P vendor and meat supply contracts, and also added some new vendors.  The advertising strategy also changed.

Store Employee Transition

According to Dan Dosenbach, Acme Vice President of Human Relations, Acme was facing "a chaotic situation" regarding the transfer of employees from A&P to Acme. (Dosenbach dep. at 45).  During the transition, all of the employee files were removed from the store. (Perez Dep. at 29:1-18. Pl. SOF ¶42.)

According to Dosenbach, Acme did not make formal offers of employment to the A&P employees. Rather, Acme required A&P employees to complete employment applications that were then entered into its computer system prior to the transfer of ownership. (Dosenbach Dep. 27:9-22-26:13; Pl. SOF ¶50).  This was done in order to verify the start date and seniority date for each employee.    Joan Perez remained the Store Manager, and Ernie Lawrence remained the Assistant Store Manager at the Wall Township store.  (Pl. SOF ¶53.) Melissa English is a manager of training and development at Acme, and she performs a variety of human resources function for Acme.  Ms. English reports to Dan Dosenbach, V.P. of Human Resources.  Ms. English testified that during the transition, she "volunteered to help with the Express Hires" because there was not enough administrative staff to process all of the employees.  (English Dep. at 48)

Acme utilizes a computer system known as the "MMS" system which allows store managers and human resources personnel to access employee information such as an employee's hire and seniority dates. (Lawrence Dep.19:5-22; Pl. SOF ¶54.)  Managers and assistant managers have access to the MMS system, but only Acme human resources personnel have access in order to activate a new "express hire" in the system.  (Lawrence Dep. at 37:9-14).

Plaintiff's attempt to return to work

According to Plaintiff, throughout his FMLA leave of absence, he contacted the Wall Township store regularly to "check-in" (Lawrence Dep. at 21:9-15, stating "I know he checked in quite often . . . "). (Pl. SOF ¶57).

Prior to his anticipated return to work date, Plaintiff contacted store manager Joan Perez who advised him that because of the transition from A&P to Acme, he would need to submit a new return to work note from his physician. Thereafter, on or about November 9, 2015, Plaintiff submitted a return to work note directly to Assistant Store Manager Lawrence. As noted above, the note stated that Plaintiff could return to work on November 16, 2015.

According to store manager Ernie Lawrence, he forwarded Plaintiff's note to Acme's human resources department in order to receive clearance to return to work, but advised Plaintiff that he could not return to work because he was "not in the system." (Lawrence Dep. 28:18-29:19). On November 12, 2015, Lawrence testified that he reached out to Acme Human Resources Agent Melissa English to inquire why Plaintiff had not been added to the MMS system, but received no response. (Pl. SOF ¶62).

On Monday, November 16, 2015, Plaintiff reported to work, whereupon he was advised that he "wasn't on the schedule." (Podurgiel Dep. at 45:5-12, 49:25-50:12; Pl. SOF ¶64.) According to Plaintiff, the following week he contacted the store by telephone to inquire when he could return to work, but was again told that he was not on the schedule. (Podurgiel Dep. at 49:1-23; Plaintiff's Phone Records, attached ECF No. 52-18.) He also visited the store in person and spoke with Joan Perez who advised him that she could not resolve the issue until the district manager returned from vacation. Following his attempted return to work on November 16, 2015,

6

Plaintiff called and his cell phone records indicate that over 15 calls were made to the Wall Township Grocery Store between November 17, 2015 and December 14, 2015.

Plaintiff also contacted representatives of the Union during this time period. Plaintiff called and his cell phone records indicate that more than 25 calls were made to the Union between November, 2015 and February, 2016.

Around early December 2015, Plaintiff sent a letter to Defendant's Human Resources Vice President Dan Dosenbach detailing his difficulty procuring reinstatement at the Wall Township Grocery Store. On Plaintiff's behalf, on December 7, 2015, Nick Rando, agent for the Union, also contacted Dosenbach to advise as to the issue with Plaintiff's ability to return to work. At deposition, Mr. Dosenbach testified that Acme's position is that employees who were out on leave of absence from a store Acme acquired are presumed to be employees but that will be confirmed when the employee returns to work with paperwork that supports the return and that the leave was appropriate. (Dosenbach Dep. at 31-32; Def. SOF ¶62).

Plaintiff also contacted A&P Human Resources Manager Mitch Schafer. On December 28, 2015, Shaffer contacted Acme Human Resources on Plaintiff's behalf advising of Plaintiff's difficulty returning to work. At deposition, Schafer was asked what his understanding was as to whether Plaintiff was eligible to be hired once he was released by his doctor. Schafer testified "he was an employee of the store that was acquired by Acme" and that "[a]ssociates that were working for the A&P that Acme acquired would become Acme associates." (Schafer Dep. at 21).

Following Shaffer's communication, Acme Associate Relations Manager Stacy Slate confirmed to Shaffer that Plaintiff was eligible to return to work. (Acme Internal Communications at ACME00095, attached as Exhibit 12. Pl. SOF ¶77).

At deposition, Melissa English, manager of training and development testified:

Q.   As of November 9th what was your understanding as to what would
     occur with regard to employees at an A&P which was acquired by Acme
     but who were out on a leave of absence at the time of acquisition?

A.    I would have needed to be told that the medical, you know that the
      medical approval to return to work was there and that as far as -- and then
      we'd need A&P to verify that they were in fact previously employed at this
      location that we acquired.

Q.   So was it your understanding they would be entitled to reemployment
     at the Acme store?

A.   Yes, yes. As long as A&P verified, you know, yes this person was in a
     purchased location.

(English Dep. at 58.)

On November 18, 2015, Melissa English entered Podurgiel into the Acme HR system
called "PeopleSoft." (English Dep. at 63-64 & 68; English Dep. Ex. P-4/Acme 0100). This was
the first situation when Ms. English had to address a situation where an A&P employee had been
out on disability. (English Dep. at 62; Def. SOF ¶78).   At deposition, Ms. English said that she
would have expected someone to be informed that she had entered Podurgiel into the HR system
on November 18, 2015 given all the email traffic back-and-forth, but she does not remember if
that step was taken. (English Dep. at 65; Def. SOF ¶84).

According to Plaintiff, at no time did Store Manager Lawrence receive communication
from any agent of Acme that Plaintiff had been re-entered into the system, and was eligible to
return to work. (Lawrence Dep. at 34:15-35:14, 38:37:25-38:6; Pl. SOF ¶78).

Included with the Statement of Undisputed Facts are a series of emails that addressed
Plaintiff's employment status.  They include the following:

On November 4, 2015, Ms. English received an email with the subject line "employees
that are not in system for 780 Wall" and the content of the message included the headline
"the following are out on disability and will be returning" followed by the names of Shawn
Williams and Podurgiel. (Acme 0051). Def. SOF ¶68.

On November 6, 2015, English responded that that she could not enter three employees into the system, including Podurgiel, because "[w]e are not hiring any Full-Timers unless they are department heads." Ms. English asked for the store to review the information with other management and get back to her. (Acme 0049.) Def. SOF ¶70

On November 9, 2015, Lawrence replied to Ms. English and wrote "Melissa, Received doctors note for Gregory Podurgiel. It states that he can return to work on the 16th of November. Any decision on what course we will take with his employment? Do you need the doctor's note faxed to you?" (Acme 0049.) Def. SOF ¶74.

On November 10, 2015 Ms. English forwarded Mr. Lawrence's message to Steve Moyer and Stacy Slate, who were associate relations managers in the Acme Human Resource Department: "Can you advise on this A&P person return to work? They were on leave when the store employees were transferred?" (Acme 0048-0049.)  Def. SOF ¶75

Mr. Moyer responded via email on November 10, 2015: "If Gregory Podurgiel was in the store that transitioned to the Acme and was out on leave prior to the live date, I would think he is able to transition into the new Acme 780? However, can anyone tell you when he went out of work? I can't wonder why his information wasn't on the store file that was loaded into People Soft in the first place? Wouldn't it be easiest instead of Express hire on him, to have him apply online and get in the system that way?" (Acme 0048.) Def. SOF ¶76

In response, Ms. English reached out via email to Mitch Schaffer to determine "should Gregory Podurgiel have been part of the transfer to Acme for the Wall, NJ store? I'm not really sure how we are handling transfers of people who were on disability at the time of the transition?" (Acme 0047-48; English Dep. at 61-62.) Def. SOF ¶77

On November 10, 2015 Mr. Schaffer replied: "He has been an Associate for 15 years and has been out on an authorized medical leave of absence since September. Joan the Store Director did not ask for an additional Meat Cutters so my assumption is she will need him when he is ready to return." (Acme 0047.)  Def. SOF ¶79

On November 11, 2015 Dan Dosenbach, Acme's Vice President of Human Resources wrote: "The position that Acme has taken and been confirmed by the Union is that employees out on a leave of absence from a store we acquired are presumed to be employees, but will be confirmed when the employee returns to work with paper work [ ] but supporting the return and that the leave of absence was appropriate. Employee[s] on leave of absence from closing stores should not be transferred into an Acme store[]." (Acme 0047.)  Def. SOF ¶80

At 5:31 PM on December 28, 2015, Schafer wrote an email to Ms. Slate and stated that Podurgiel was out on a medical leave of absence, has since received full duty release from his doctor, and that Podurgiel told Mr. Schafer that Podurgiel was having trouble coming back to work. (Acme 0097.) Def. SOF ¶85

At 6:41 PM on December 28, 2015, Ms. Slate forwards Mr. Schafer's email to Ms. English and asks her to "express hire" Podurgiel. (Acme 0096.) Def. SOF ¶86

At 9:03 PM on December 28, 2015, Ms. English responds to the email thread and asks, "Could this be the same person as Gregory Podurgiel from 780? Employee ID 3487745. Hired 11/16/15 as an express hire. I remember this was a person who came back from leave. He's in as a full time meat associate." (Acme 0096.) Def. SOF ¶90

At 10:58 PM on December 28, 2015, Ms. Slate responds to Ms. English's 9:03 PM message to confirm that it was the same associate. (Acme 0095.) Def. SOF ¶91

At 7:22 AM on December 29, 2015, Ms. English writes back to the email thread and states: "The store gave me the impression he was already back hence the express hire was entered over a month ago so he's good to go. Mary Pinskis team will have to update his seniority in the system." (Acme 0095.) Def. SOF ¶92

At 7:38 AM on December 29, 2015, Mr. Schafer sent the following text message to Podurgiel: "Greg, you should be ok to return please call Joan. Thanks." (Schafer Dep. at 25-26; Acme 0052.) Def. SOF ¶93

Podurgiel did not respond to Mr. Schafer's text message of December 29, 2015. (Schafer Dep. at 29-30; Def. SOF ¶84.    Plaintiff has stipulated that he is not seeking back pay after the date of the text message, December 29, 2015.  It is unclear why Podurgiel did not respond or return to work.

Plaintiff filed a Complaint before this Court on April 21, 2016.  There he alleged the following Claims: (I) Violations of the Family and Medical Leave Act (Interference); (II) Violations of the Family and Medical Leave Act (Retaliation); (III) Violations of the New Jersey Law Against Discrimination (NJLAD)(Disability/Perceived Disability); (IV) Violations of NJLAD (Discrimination); Violations of NJLAD (Failure to Hire).

On February 15, 2018 Defendant filed a motion for Summary Judgment.  Also on February 15, 2018, Plaintiff filed a motion for partial summary judgment.[1]

---

[1]     Both parties filed their motions incorrectly, so much so that while there are two motions, the docket lists five motions pending. It appears that parties filed declarations and statements of undisputed material facts as separate motions. [See ECF Nos. 45, 46, 47, 48, 49].

In its motion to dismiss, Defendant argues that Plaintiff fails to meet the requirements of prima facie claims under FMLA, and that Acme is not a successor in interest employer under the FMLA. Further, Defendant argues that Plaintiff has also failed to meet the prima facie requirements for his NJLAD claims.   Plaintiff's motion for partial summary avers that Acme does meet the FMLA broad definition of successor-in-interest, and is liable to Plaintiff for any FMLA violations.

## II.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654,

657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson*, 477 U.S. at 247-48. If a court determines, after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor "that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).

III.

First, the Court reviews whether Defendant is considered a successor-in-interest of A&P and thus should be held liable for the alleged FMLA violations. The FMLA defines an "employer" as follows:

> (A) In general. The term "employer"--
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes--
>
> (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
>
> (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)); and
>
> (iv) includes the General Accounting Office [Government Accountability Office] and the Library of Congress.

29 U.S.C. § 2611(4)(A)(i)-(iv). Section (A)(ii)(II) is of interest in the present matter. Defendant argues that the Bankruptcy Court held that Acme was not a continuation or substantial continuation

of A&P and thus should not be considered a successor-in-interest under the FMLA. *See In re Trans World Airlines*, 322 F.3d 283 (3d Cir. 2003) (allowing defendant to sell the property "free and clear" from the alleged EEOC claims in the case based on the language of the Bankruptcy Court's opinion.) As cited in the Statement of Undisputed Material Facts submitted by Defendant, the bankruptcy court's decision stated in paragraph 15:

> Except with as expressly set forth in the Purchase Agreement, the Buyer and its successors and assigns shall have no liability for any Claim… whether known or unknown as of the Closing Date, now existing or hereafter arising … whether derivatively, vicariously, as a transferee or successor or otherwise

(SOF ¶8b).

Acme argues that Mr. Podurgiel's claim did not arise until November 9 or November 16, 2015 when he was denied the right to resume work, so the prior bankruptcy court finding was not an issue at that time. "Successor liability under the FMLA, […] derives from labor law, not corporate law." *Cobb v. Contract Transp., Inc.*, 452 F.3d 543, 551 (6th Cir. 2006). The definition and standards are thus applied in an equitable manner. *Id.* This Court has previously held that the standards utilized in determining the successor-in-interest question in FMLA cases must be interpreted through the employee's viewpoint. *Vanderhoof v. Life Extension Inst.*, 988 F. Supp. 507, 513 fn 2 (D.N.J. 1997)(citing to *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 43, 96 L. Ed. 2d 22, 107 S. Ct. 2225 (1987)).

29 C.F.R. § 825.107 provides further guidance to the Court in answering the question of successorship, stating,

> [I]n determining whether an employer is covered because it is a "successor in interest" to a covered employer, the factors used under Title VII of the Civil Rights Act and the Vietnam Era Veterans' Adjustment Act will be considered. However, unlike Title VII, whether the successor has notice of the employee's claim is not a consideration. Notice may be relevant, however, in determining successor liability for violations of the predecessor.

The factors to be considered include:

(1) Substantial continuity of the same business operations;
(2) Use of the same plant;
(3) Continuity of the work force;
(4) Similarity of jobs and working conditions;
(5) Similarity of supervisory personnel;
(6) Similarity in machinery, equipment, and production methods;
(7) Similarity of products or services; and
(8) The ability of the predecessor to provide relief.

(b) A determination of whether or not a successor in interest exists is not determined by the application of any single criterion, but rather the entire circumstances are to be viewed in their totality.

Here, Acme substantially continued the same business operations as A&P with only a short interruption to change the signage and the interior of the store to conform to other Acme stores. The store did not change location and assured continuity of the work force in their Purchase Agreement, where Acme agreed to offer employer to all "covered employees" of A&P. (Exhibit 8. Pl. SOF ¶25.) There were no drastic changes made to the management team at the store. Perez remained the Store Manager and Lawrence remained the Assistant Store Manager. Basically, the same work was being carried out, i.e., shelves, scanning and preparing meat for sale. *Vanderhoof*, 988 F. Supp. at 514. The products and services remained similar as Acme continued to operate the store as a supermarket. In light of the above, the Court finds that Defendant is a successor-in-interest of A&P.

Next the Court reviews whether the other elements required to meet a prima facie case under FMLA have been met by Plaintiff.

Plaintiff raises two claims in connection with the FMLA: interference and retaliation. Some courts have held that facially duplicative interference and retaliation claims may not be pursued simultaneously. *See Kumar v. Johnson & Johnson, Inc.*, No. CIV.A. 12-779 MAS, 2014 U.S. Dist. LEXIS 154650, 2014 WL 5512549, at *11 n.8 (D.N.J. Oct. 31, 2014); *Yamamoto v. Panasonic*

14

*Corp. of N. Am.*, No. CIV.A. 12-2352 JLL, 2013 U.S. Dist. LEXIS 93244, 2013 WL 3356214, at
*10-11 (D.N.J. July 2, 2013); *see also Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294,
314 n.25 (3d Cir. 2012) (suggesting in dictum that redundant retaliation and interference claims
may be dismissed). Others have suggested, in dictum, that a redundant claim need not necessarily
be dismissed. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009); *see also Beese
v. Meridian Health Sys., Inc.*, 629 F. App'x 218, 223 n.3 (3d Cir. 2015). In the interest of
comprehensiveness, the Court reviews both.

### *FMLA Claim I (Interfere)*

Plaintiff argues that Defendant interfered with his right to take FMLA leave on two
occasions: first, by asking him to attend the orientation session held in October 2015, and second
by failing to timely reinstate him once his leave ended. (Compl., ¶¶49-50).

The FMLA finds it "unlawful for any employer to interfere with, restrain, or deny the
exercise of or the attempt to exercise, any right provided" in the FMLA. 29 U.S.C. § 2615(a)(1).
In order to assert an interference claim, Plaintiff must show that he was entitled to benefits under
the FMLA and that he was denied them. *Callison v. Phila*, 430 F.3d 117, 119 (3d Cir. 2005) (citing
29 U.S.C. §§ 2612(a), 2614(a)). Furthermore, Plaintiff must establish that this denial prejudiced
him. *Scofienza v. Verizon Pennsylvania, Inc.*, 307 Fed. Appx. 619, 621 (3d Cir. 2008) (quoting
*Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89, 122 S. Ct. 1155, 152 L. Ed. 2d 167
(2002)). "Prejudice occurs when the employer's failure to advise the plaintiff of [his] FMLA rights
render[s] [him] unable to exercise the right to leave in a meaningful way, thereby causing injury."
*Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 318-19 (3d Cir. 2014) (internal quotations and
modifications omitted). Nevertheless, "mere technical FMLA violations are not actionable." *Bravo*

15

*v. Union Cty.*, 2013 U.S. Dist. LEXIS 73379, 2013 WL 2285780, at *9 (D.N.J. May 23, 2013) (citation omitted).

With regard to the orientation session, Defendant argues that Acme could only request A&P to permit Acme employees to visit the store. However, Acme could not demand A&P employees' presence because it had not taken over the store yet. Plaintiff was asked to attend the orientation session by the store director and meat department manager, not by an Acme employee. (SOF ¶¶43-45). Defendant argues that asking Podurgiel to attend the orientation session constituted "de minimis contact" that did not interfere with Plaintiff's FMLA leave.

In *O'Donnel v. Passport Health Communs., Inc.* 561 Fed. Appx. 212, 218 (3d Cir., 2014), the Defendant had apparently contacted Plaintiff during her leave to ask about the status of a decision to switch position, a salary request, as well as to acknowledge that O'Donnell was on medical leave. In *O'Donnel*, the Court held that the contact with Plaintiff was de minimis because they did not require Plaintiff to perform work to benefit the company "and did not materially interfere with her leave" *Id.* Further, the *O'Donnell* court stated that "the contacts were aimed only at retaining [Plaintiff] as an employee, and there is no evidence showing that [Defendant] in any way hampered or discouraged [Plaintiff's] exercise of [Plaintiff's] right to medical leave, or attempted to persuade her to return from her leave early." *Id.*

The same reasoning applies in the present case. Plaintiff was not asked to perform work, nor was he discouraged from exercising his right to medical leave. Plaintiff was asked to attend a meeting about his relationship to a new employer rather than communicate on the phone. The attendance at the orientation session still appears to be de minimis breach of FMLA leave in light of all the circumstances. Moreover, it is also unclear whether attendance at the meeting was a

mandatory obligation or a voluntary action of Podurgiel.   Thus, based on the facts and the *O'Donnell* rationale, this claim should be dismissed.

Plaintiff's second argument is that Acme breached FMLA by failing to reinstate Podurgiel about five weeks earlier. Defendant argues that Acme did not fail to reinstate Mr. Podurgiel, but that the delay occurred during the upheaval caused by the chaotic transition and was unrelated to his FMLA leave.   On the other hand, Plaintiff asks for damages up until the date when he was asked to return to work, December 29, 2015.   The record shows that Plaintiff was apparently re-entered into the system via "express hire" "over a month" before December 29, 2015. (*See* Def. SOF ¶92.)   That is, on November 18, 2015, Melissa English entered Podurgiel in the Acme Human Resources system.   As such, Acme management could have acted on Podurgiel's reinstatement request at that time.

Pursuant to 29 C.F.R. 825.107(c),

> When an employer is a successor in interest, employees' entitlements are the same as if the employment by the predecessor and successor were continuous employment by a single employer. For example, the successor, whether or not it meets FMLA coverage criteria, must grant leave for eligible employees who had provided appropriate notice to the predecessor, or continue leave begun while employed by the predecessor, including maintenance of group health benefits during the leave and job restoration at the conclusion of the leave. …

A reasonable jury should assess whether the employee invoked his right to return to work, and whether the employer's delay in processing Mr. Podurgiel's employee records interfered with this right.   As such, summary judgment is denied on Count I as to both Plaintiff's and Defendant's motion.

### *FMLA Claim II (Retaliation)*

FMLA retaliation claims based on circumstantial evidence are assessed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct.

1817, 36 L. Ed. 2d 668 (1973). *Kancherla v. Lincoln Tech. Inst., Inc.*, 2018 U.S. Dist. LEXIS 25456, *26 (D.N.J. Feb. 15, 2018). The framework consists of three steps. First, a plaintiff must present sufficient evidence to support a prima facie case of discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). Once the plaintiff establishes a prima facie case, the burden of production then shifts to the defendant, who must articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 507; *Burdine*, 450 U.S. at 254; *McDonnell Douglas*, 411 U.S. at 802. If the defendant satisfies this burden, the reviewing court must proceed to the third step. At this stage, the burden of production shifts back to the plaintiff who must come forward with admissible evidence showing that the defendants" articulated, nondiscriminatory reasons were not the true reasons for the adverse action, but merely a Apretext for discrimination." *Hicks*, 509 U.S. at 507-08; *Burdine*, 450 U.S. at 253.

To succeed on an FMLA retaliation claim, a plaintiff must establish that: (1) he exercised his rights under the FMLA; (2) there was an adverse employment action; and (3) a causal connection exists between his protected activity and termination. *See Conoshenti v. Pub. Serv. Elect. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). If the plaintiff meets the prima facie burden, a rebuttable presumption of unlawful retaliation arises and the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the plaintiff's termination. If the defendant then satisfies its burden, the burden reverts to the plaintiff to show that the proffered reason for the termination was a pretext for retaliation. *Id.*

Plaintiff alleges that "Defendant retaliated against [him] by firing him/not continuing his employment/refusing to hire him for having taken FMLA-qualifying leave." (Compl. ¶54). Although Plaintiff clearly exercised his rights under the FMLA, he was not fired, and he was eventually rehired.

18

"[I]n the context of FMLA retaliation, an adverse employment action must be one that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Kancherla v. Lincoln Tech. Inst., Inc.*, 2018 U.S. Dist. LEXIS 25456, *28 (Feb 15, 2018) (quoting *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d Cir. 2014). "The Third Circuit has not yet decided whether the FMLA analysis should incorporate the lower standard for "adverse employment action" that the Supreme Court has adopted in Title VII retaliation claims. *Id.* at 257 n.6 (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). Under the more relaxed *Burlington* standard, "'a plaintiff must show that a reasonable employee would have found the challenged action materially adverse,' such that the action well might have dissuaded a reasonable worker from taking a protected action." *Id.* (quoting *Burlington*, 548 U.S. at 68). Under Burlington an adverse employment action is defined as a "significant change in employment status, such as hiring, firing, failing to promote, reassignment, or a decision causing a significant change in benefits." *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749, 3 (1998).

The process leading to Plaintiff's rehire was less than efficient, and was characterized as general chaos associated with the transition; however, Plaintiff failed to show that there was an adverse action.

The Court finds that Plaintiff failed to meet the prima facie requirements for this claim. Thus, Summary Judgment is granted in favor of Defendant on Count II.

*NJLAD Claims (Claims III, IV, V)*

The NJLAD prohibits employment discrimination on the basis of disability or perceived disability. To succeed on a discriminatory discharge claim under the NJLAD, Plaintiff must "show

19

that the prohibited consideration . . . played a role in the decision making process and that it had a determinative influence on the outcome of that process. *Bergen Commer. Bank v. Sisler,* 157 N.J. 188, 207, 723 A.2d 944 (1999). Discriminatory discharge claims under the NJLAD are also analyzed under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Joseph v. New Jersey Transit Rail Operations Inc.,* 586 Fed. Appx. 890, 892 (3d Cir. 2014) (citing *Viscik v. Fowler Equip. Co., 173 N.J. 1, 13-14, 800 A.2d 826 (2002)); See also Battaglia v. United Parcel Servs., Inc.,* 214 N.J. 518, 546, 70 A.3d 602 (2013) ("All LAD claims are evaluated in accordance with the United States Supreme Court's burden-shifting mechanism.")

> a.   *CLAIM III Violations of the New Jersey Law Against Discrimination (NJLAD) (Disability/Perceived Disability)*

To establish a prima facie case of discriminatory discharge due to a disability in violation of the NJLAD, a plaintiff must establish: "(1) that he is a member of a protected class [i.e. that he was disabled or perceived to be disabled]; (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and (4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class." *Joseph,* 586 Fed. Appx. at 892 (citation omitted); *Grande v. Saint Clare's Health Sys.*, 230 N.J. 1, 18, 164 A.3d 1030, 1039 (2017).

Defendant argues that Plaintiff failed to meet the prima facie requirements for this claim because he has failed to show that he suffered an adverse employment action because of his disability. As noted above, the delay in adding Podurgiel to the active roster is an adverse action under this circumstance. Defendant also argues that they did not seek a similarly qualified individual after they failed to immediately re-hire Plaintiff.

Acme had since the beginning showed an intention of re-hiring Plaintiff. Plaintiff was

technically terminated, as where all other A&P employees due to the ownership transition; however, Podurgiel was not terminated because of his disability. There was a delay in his paperwork.      Thus, the Court finds that the central requirement of "termination" or adverse action because of disability has not been met. Even assuming there was evidence of an adverse action, Plaintiff would fail to meet the *McDonnell* test because Defendant has provided evidence that the delay in rehiring Plaintiff was simply cause by the chaos of the transition, a legitimate, nondiscriminatory reason. *Hicks*, 509 U.S. at 507.  Plaintiff has failed to set forth any evidence that Defendant's reasons were a pretext.

The same reasoning applies to Count IV and V where Plaintiff alleged that Defendant's actions were guided by retaliatory motive and that he was not rehired because of his disability. Again, Plaintiff shows no evidence of adverse action. A separate analysis on these counts would be redundant.

The Court finds that this Count should be dismissed, along with Count IV and V, for the same reasons.

In conclusion, Plaintiff's Motion for Partial Summary Judgment is granted in part, specifically to the successor-in-interest argument, and denied in part. Defendant's Motion for Summary Judgment is denied in part, as to Claim I (interference for failure to timely reinstate) and granted as to Claim I (orientation), II, III, IV, V.

<u>ORDER</u>

THIS MATTER having been opened to the Court by Defendant's motion for summary judgment (ECF No. 45) and Plaintiff's motion for partial summary judgment (ECF No. 49); and the Court having fully considered the submissions in support thereof, and any opposition thereto; and having considered the arguments of counsel; and for good cause shown;

IT IS on this 21st day of May, 2018,

   **ORDERED** that Defendant's motion for summary judgment (ECF No. 45) is granted in

part and denied in part; and it is further,

   **ORDERED** that Plaintiff's motion for partial summary judgment (ECF No. 49) is granted

in part and denied in part; and it is further;

   **ORDERED** that Count I is dismissed as to orientation; and it is further

   **ORDERED** that Counts II, III, IV and V are dismissed in their entirety.


                              _____
                              PETER G. SHERIDAN, U.S.D.J.