**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

GREGORY PODURGIEL

             Plaintiff,             CIVIL ACTION NO: 3:16-CV-02262

   v.

ACME MARKETS INC.

             Defendant.

**PLAINTIFF'S PROPOSED JURY INSTRUCTIONS**

# TABLE OF CONTENTS

Preliminary Instructions — Conduct of the Jury .................................................... 3

Preliminary Instructions — Bench Conferences ...................................................... 4

Preliminary Instructions — Evidence ....................................................................... 5

Preliminary Instructions – Direct and Circumstantial Evidence........................... 6

Preliminary Instructions — Credibility of Witnesses............................................. 7

Preliminary Instructions — Jury Questions for Witnesses .................................... 8

Preliminary Instructions — Note-Taking By Jurors ............................................... 9

Preliminary Instructions — Preponderance of the Evidence ............................... 10

Preliminary Instructions — Description of Trial Proceedings ............................. 11

General Instructions For Use During Trial  — Stipulation of Fact ..................... 12

Facts Determined by the Court ............................................................................... 13

General Instructions For Use During Trial —  Recess Admonition .................... 14

FMLA Introductory Instruction ............................................................................. 15

FMLA Introductory Instruction ............................................................................. 16

FMLA Eligibility – What is a Serious Health Condition ...................................... 17

FMLA Eligibility – What is a Health Care Provider ............................................ 18

FMLA Eligibility – What is Notice ......................................................................... 19

FMLA Interference – Generally.............................................................................. 21

FMLA Interference – Employer Intent Irrelevant ............................................... 23

FMLA Damages — Back Pay.................................................................................. 24

General Instructions For Use At End of Trial — Deliberations ......................... 25

General Instructions For Use At End of Trial — Number of Witnesses............. 27

**Preliminary Instructions — Conduct of the Jury**

**( Model 1.3)**

Now, a few words about your conduct as jurors.

First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence. I know that many of you use cell phones, smart phones, and other portable electronic devices; laptops, netbooks, and other computers both portable and fixed; and other tools of technology, to access the internet and to communicate with others. You also must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case. This includes your family and friends. You may not communicate orally with anyone about the case on your cell phone, smart phone, or portable or fixed computer or device of any kind; or use these devices to communicate electronically by messages or postings of any kind including e-mail, instant messages, text messages, text or instant messaging services, or through any blog, website, internet chat room, or by way of any other social networking websites or services.

If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either. That is why you are asked to wear your juror tags. It shows that you are someone who is not to be approached in any way.

Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the evidence presented at trial. In other words, you should not consult dictionaries or reference materials, search the internet, websites, blogs, or use any other electronic tools to obtain information about this case or to help you decide the case. Please do not try to find out information from any source outside the confines of this courtroom.

Again, do not reach any conclusion on the claims until all of the evidence is in. Keep an open mind until you start your deliberations at the end of the case.

Finally, if any member of the jury has a friend or family member who is in attendance at this public trial, that visitor must first register with my Clerk because special rules will govern their attendance. You may not discuss any aspect of this trial with the visitor, nor may you permit the visitor to discuss it with you.

## Preliminary Instructions — Bench Conferences

**(Model 1.4)**

During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference.  If that happens, please be patient.

We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.

We will, of course, do what we can to keep the number and length of these conferences to a minimum.

I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

# Preliminary Instructions — Evidence

**(Model 1.5)**

The evidence from which you are to find the facts consists of the following:

> 1. The testimony of the witnesses;

> 2. Documents and other things received as exhibits;

> 3. Any facts that are stipulated--that is, formally agreed to by the parties; and

> [4. Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.]

The following things are not evidence:

> 1. Statements, arguments, and questions of the lawyers for the parties in this case;

> 2. Objections by lawyers.

> 3. Any testimony I tell you to disregard; and

> 4. Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear  in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way.

You should use your common sense in weighing the evidence.  Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion.

There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction.

Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded.  Do not speculate about what a witness might have said or what an exhibit might have shown.

## Preliminary Instructions – Direct and Circumstantial Evidence

**(Model 1.6)**

There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence."  An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses — something the witness has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition.

The other type of evidence is circumstantial evidence.  "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining.

You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.

## Preliminary Instructions — Credibility of Witnesses
**(Model 1.7)**

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief.  You may believe everything a witness says or only part of it or none of it.   In deciding what to believe, you may consider a number of factors, including the following:

(1) the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(2) the quality of the witness's understanding and memory;

(3) the witness's manner while testifying;

(4) whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(5) whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(6) how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(7) any other factors that bear on believability.

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

## Preliminary Instructions — Jury Questions for Witnesses
**(Model 1.8)**

Only the lawyers and I are allowed to ask questions of witnesses.  You are not permitted to ask questions of witnesses.

## Preliminary Instructions — Note-Taking By Jurors

**(Model 1.9)**

As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial.  But you should not assume that the transcripts will be available for your review during your deliberations. You must pay close attention to the testimony as it is given.

You may not take notes during the course of the trial. There are several reasons for this. It is difficult to take notes and, at the same time, pay attention to what a witness is saying and the witness's manner while testifying. One of the reasons for having a number of persons on the Jury is to gain the advantage of your individual and collective memories so that you can then deliberate together at the end of the trial and reach agreement on the facts. While some of you might feel comfortable taking notes, other members of the Jury may not feel as comfortable and may not wish to do so. Notes might be given too much weight over memories, especially the memories of those who do not take notes. So, for those reasons, I ask that you not take notes during the trial.

## Preliminary Instructions — Preponderance of the Evidence
**(Model 1.10)**

This is a civil case. Gregory Podurgiel is the party who brought this lawsuit. ACME is the party against which the lawsuit was filed. Mr. Podurgiel has the burden of proving his case by what is called the preponderance of the evidence.  That means Mr. Podurgiel has to prove to you, in light of all the evidence, that what he claims is more likely so than not so.  To say it differently: if you were to put the evidence favorable to Mr. Podurgiel and the evidence favorable to ACME on opposite sides of the scales, Mr. Podurgiel would have to make the scales tip somewhat on his side.  If Mr. Podurgiel fails to meet this burden, the verdict must be for ACME. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.

In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies only to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.

## Preliminary Instructions — Description of Trial Proceedings
**(Model 1.12)**

The trial will proceed in the following manner:

First, attorney(s) for Mr. Podurgiel will make an opening statement to you. Next, attorney(s) for ACME may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.

After the attorneys have made their opening statements, I will instruct you on the applicable law and then each party is given an opportunity to present its evidence.

Mr. Podurgiel goes first because plaintiff has the burden of proof. Mr. Podurgiel will present witnesses whom counsel for ACME may cross-examine, and Mr. Podurgiel may also present evidence. Following Mr. Podurgiel's case ACME may present evidence.  Counsel for Mr. Podurgiel may cross-examine witnesses for the defense.  After the parties' main case is presented, they may be permitted to present what is called rebuttal evidence.

After all the evidence has been presented, I will instruct you on the law and then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. After that you will retire to the jury room to deliberate on your verdict in this case.

### General Instructions For Use During Trial  — Stipulation of Fact
**(Model 2.4)**

The parties have agreed that the following facts are true.

1. Gregory Podurgiel was hired by the Greater Atlantic and Pacific Tea Company, to be referred hereinafter to as "A&P" in 1999 as a butcher.

2. While employed at A&P, Gregory Podurgiel was a member of the United Food Commercial Workers Local 464A (referred to hereinafter as "464A").

3. From in or around 2014 to September 2015, Plaintiff worked for A&P at a grocery store located in Wall Township New Jersey (hereinafter "the Wall Township Grocery Store")

4. That Mr. Podurgiel had worked at least 1250 hours in the 12 months prior to taking his September 2015 FMLA leave.

5. During the time Plaintiff worked at the Wall Township Grocery Store, Joan Perez was the store manager of the Wall Township Grocery Store and Ernest Lawrence was the Assistant Store Manager at the Wall Township Grocery Store.

6. In July 2015, A&P filed for bankruptcy.

7. Following the bankruptcy filing, ACME submitted a bid to purchase 76 of A&P's stores. Included in this bid was the Wall Township Grocery Store.

8. On July 19, 2015, ACME entered into an Asset Purchase Agreement with A&P to memorialize the agreement to transfer stores operated by A&P to ACME.

9. ACME also entered into Memorandums of Understanding with unions at each store it purchased, setting forth agreements as related to the terms and conditions of employment between the union members and Defendant at each applicable store.

10. On August 19, 2015, ACME entered into a Memorandum of Understanding with the Local 464A related to the terms and conditions of employment of employees at the Wall Township Grocery Store.

11. Following ACME's acquisition of the Wall Township Grocery Store, Joan Perez remained the store manager and Earnest Lawrence remained the Assistant Store Manager until September 2017.

12. Plaintiff is not seeking backpay damages after December 29, 2015.

You must therefore treat these facts as having been proved for the purposes of this case.

## Facts Determined by the Court

During the trial, you may hear reference to A&P and ACME.  As you have been informed, ACME purchased A&P during a bankruptcy proceeding.  When ACME purchased A&P, it became a legal successor in interest.  What this means is that it was required to fulfil all any legal obligation of A&P with respect to the FMLA rights of Mr. Podurgiel and other employees.  As a consequence, in reaching your verdict, you should not differentiate A&P and ACME.  If you find that A&P received notice, then ACME received notice as a matter of law.  If you find that A&P was required to return Mr. Podurgiel to work, then you must find ACME was required to return Mr. Pordurgiel.[1]

---

[1] *See* Memorandum and Order Partially on the Parties' Cross Summary Judgment Motions, ECF Doc. No. 60 at 14.

### General Instructions For Use During Trial — Recess Admonition
**(Model 2.14)**

We are about to take a recess and I remind you of the instruction I gave you earlier. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else.  If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately.  Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet.  Remember that I told you not to use any electronic tools to communicate with anyone about the case or to do research relating to the case.  Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to [identify court personnel] to give to me.

I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.

# FMLA Introductory Instruction

In this case the Plaintiff Gregory Podurgiel has made a claim under the Family and Medical Leave Act, the FMLA.  The purposes of the FMLA are to balance the demands on the workplace with the needs of families, to promote the stability and economic security of families, and to promote national interests in preserving family integrity.  29 U.S.C. § 2601(b).

Among other protections, the Act entitles eligible employees to take up to twelve workweeks of unpaid leave because of a serious health condition that makes the employee unable to perform the functions of his or her position.[2]

Specifically, Mr. Podurgiel claims that ACME violated his FMLA rights when it failed to return him to work immediately following the date he was cleared to return to work.

ACME denies it violated with Mr. Podurgiel's FMLA rights.

I will now instruct you more fully on the issues that you must address in this case.

---

[2] 29 U.S.C. § 2612; 29 C.F.R. § 825.112; Adopted from Eighth Circuit Model Jury Instruction, 14.00.

## FMLA Introductory Instruction

Mr. Podurgiel claims that ACME violated his FMLA rights by failing to restore him to his position immediately following the completion of his FMLA leave.

To prevail on his claim, Mr. Podurgiel must prove all of the following by a preponderance of the evidence that he was entitled to take an FMLA leave, and that ACME denied him the benefits under this law to which he was entitled.[3]

I will now instruct you more fully as to each of these elements.

---

[3] *See Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (noting that to prevail on a claim of interference, "the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them").

## FMLA Eligibility – What is a Serious Health Condition

To be eligible to take an FMLA leave, Mr. Podurgiel must prove, by a preponderance of the evidence, that he suffered from a serious health condition.

Under the FMLA, a "serious health condition" is construed broadly so that the FMLA's provisions are interpreted to effect the Act's remedial purpose.[4] Thus, any medical condition which requires treatment by a medical professional and results in an employee being unable to work in her or her job qualifies as a "serious health condition."

To prove that he was qualified to take FMLA leave, Mr. Podurgiel must show, to a preponderance of the evidence, that he was unable to work in his job due to his medical condition for more than three consecutive days that also involved at least two in-person treatment by a health care provider.  Even if you find that he could perform other work or activities, the only inquiry is whether he was medically able to perform his current job at ACME.[5]  However, in order to constitute a serious health condition necessitating FMLA leave, the conditions must affect the Mr. Podurgiel's ability to perform the functions of the position.[6]

The statute does not require that a patient be hospitalized to be incapacitated.[7]

---

[4] *Stekloff v. St. John's Mercy Health Systems*, 218 F.3d 858, 862 (8th Cir. 2000); *Bonkowski v. Oberg Industries Inc.*, 787 F.3d 190, 195 (3d Cir. 2015) (FMLA is to be interpreted broadly).

[5] *Stekloff v. St. John's Mercy Health Systems*, 218 F.3d 858, 862 (8th Cir. 2000); Eighth Circuit Model Instructions  14.00; 14.22 (Modified).

[6] *Dalton v. Manorcare of Des Moines of IA, LLC*, 782 F.3d 955, 961 (8th Cir. 2015).

[7] *Id. See also Victorelli v. Shadyside Hosp.*, 128 F. 3d 184 (3d Cir. 1997) (noting a serious health condition requires "inpatient care or continuing treatment").

## FMLA Eligibility – What is a Health Care Provider

As used in these instructions the phrase "health care provider" includes doctor of medicine, doctor of osteopathy, podiatrist, dentist, clinical psychologist, optometrist, nurse practitioner, nurse-midwife, or clinical social worker[1], so long as the provider is authorized to practice in the State and is performing within the scope of her practice.[8]

---

[8] 29 C.F.R. § 825.125(a)(1)(2); Eighth Circuit Model Jury Instructions 14.23

## FMLA Eligibility – What is Notice[9]

To entitle himself to the benefits of the FMLA, Mr. Podurgiel must also prove, by a preponderance of the evidence, that he gave his employer "appropriate notice" of his need to be absent from work.  Here, Mr. Podurgiel may satisfy this burden by providing such notice to A&P or ACME – because ACME is a legal successor in interest, ACME may not avoid liability by claiming it was unaware of the notice simply because the notice was provided to A&P.  When ACME decided to purchase a large business such as A&P, it was required to ensure that the rights of A&P employees under the FMLA were protected.

The critical question for determining whether "appropriate notice" is given is whether the information given to the employer is sufficient to establish that the employee may need an FMLA qualifying leave.[10]

The law does not require that an employee seeking FMLA leave specifically cite to the FMLA in providing his employer with notice.[11] The law does not require that employees seeking FMLA leave make a formal written request. Simple verbal notice of the condition and need for leave is sufficient.

Once an employer gives appropriate notice of his need FMLA leave, the employer must required, at least preliminarily, to designate the employee's absences as an FMLA protected leave. If the employer is unsure of whether the requested leave qualifies under the FMLA, the burden is then on the employer to request additional information from the employee's doctor to confirm the

---

[9] *See* Third Circuit Model Jury Instruction 10.1.1 at note 6 identifying that the model instruction may "require tailoring" as to the issue of notice. The additional inserted language is that identified in footnote to the instruction or the cases cited within same.

[10] *See Sarnowski v. Air Brooke Limousine, Inc*., 510 F.3d 398, 403 (3d Cir. 2007) (holding that "in order to benefit from the protections of the statute, an employee must provide his employer with enough information to show that he ***may*** need FMLA leave") *quoting Woods v. DaimlerChrysler Corp*., 409 F.3d 984, 990 (8th Cir.2005) (emphasis added); *see also Hayduk v. City of Johnston*, 580 F. Supp. 2d 429, 456 (W.D. Pa. 2008) (same)

[11] *Id*. at 402 ("The employee need not expressly assert rights under the FMLA or even mention the FMLA . . . ")

employee's entitlement.[12] If an employer deems that the request by the employee is insufficient to qualify for FMLA leave, the employer must then notify the employee of same.[13]

Because this Court has determined that ACME is a successor employer to A&P, you need only determine whether Mr. Podurgiel gave appropriate notice to his employer at the time his leave was needed.[14]

---

[12] *See* 29 C.F.R. 825.208(e)(2) (noting that if an employer is uncertain whether a leave qualifies for FMLA "he should make a preliminary designation" and "request such additional information from the employee's doctor or other reputable source as may be necessary to confirm the employee's entitlement); *see also Hayduk v. City of Johnstown*, 580 F. Supp. 2d 429, 457 (W.D. Pa. 2008)("the regulations are clear that once the employer determines that it requires more information to determine whether FMLA leave is being requested, the burden shifts to the employer to investigate further") *quoting Peter v. Lincoln Technical Inst., Inc.*, 255 F.Supp.2d 417, 441 (E.D.Pa.2002)

[13] 29 C.F.R. 825.300(d)(1) ("If the employer determines that the leave will not be designated as FMLA-qualifying . . . the employer must notify the employee of that determination").

[14] *See Jolliffe v. Mitchell*, 971 F. Supp. 1039, 1042 (D.Va 1997) (imputing knowledge of employee's need for FMLA qualifying leaves of absence to successor employee)

# FMLA Interference – Generally

In order to prove that ACME interfered with his FMLA rights, Mr. Podurgiel must show that he was denied the benefits to which he was entitled under the FMLA.

One of the rights guaranteed under the FMLA is an employee's right to be restored to their position upon return from FMLA leave.[15] Once an employee invokes their right to restoration, the employer cannot require an employee to take more FMLA than necessary.[16] Put another way, this right to restoration is immediately triggered upon an employee providing clearance to return to work.[17]   An employer which delays an employee's return to work has interfered with the employee's FMLA rights and is liable to the employee for wages lost during the delay.[18]

Once an employee triggers the right to restoration, an employer cannot require the employee to take more leave than necessary, or deny this right based on any legitimate business purposes.[19] Rather, an employer can only overcome a failure to restore claim of FMLA interference if it proves that the employee would not have been terminated, even if he did not take FMLA leave.[20]

Thus, if you find that Mr. Podurgiel sought restoration from ACME, then ACME can only defeat his claim if it proves, by a preponderance of the evidence, that it would not have restored Mr. Podurgiel to his position even if he had not taken FMLA leave.

You must note that you do not need to find that ACME intentionally interfered with Mr. Podurgiel's right to leave because the question is not about whether ACME acted with bad intent,

---

[15] *See Budhun v. Reading Hosp. and Medical Center*, 765 F.3d 245, 251 (3d Cir. 2014) ("One of the rights that [the FMLA] guarantees is 'to be restored by the employer to the position of employment held by the employee . . . when the leave commenced' upon return from FMLA leave"); *citing* 29 U.S.C. § 2614(a)(1) (identifying the right to restoration as a benefit of the FMLA).

[16] *Id*. ("An employee may not be required to take more FMLA than necessary to resolve the circumstances that precipitated the need for leave").

[17] *See Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 253 (3d Cir. 2014) ("once an employee submits a statement from her health care provider which indicates that she may return to work, the employer's duty to reinstate her has been triggered under the FMLA"); *quoting Brumbalough v. Camelot Care Centers, Inc.,* 427 F.3d 996, 1004 (6th Cir. 2005); *see also Hoge v. Honda of Am. Mfg., Inc*., 384 F.3d 238 (6th Cir. 2004) (holding that the FMLA provision did not afford employer a reasonable amount of time to restore employee after learning that she was ready to return to work).

[18] *See* 29 C.F.R. § 825.311;

[19] *Callison v. City of Philadelphia*, 430 F.3d 117, 119–20 (3d Cir. 2005)("the employer cannot justify its actions by establishing a legitimate business purpose for its decision").

[20] *See Sanders v. City of New Port*, 657 F. 3d. 772, 780-81 (9th Cir. 2011) (holding that the employer who denies an employee reinstatement following FMLA leave has the burden of establishing an employee was not entitled to reinstatement to defeat an FMLA interference claim) ("the regulation validly shifts to the employer the burden of proving that an employee ... would have been dismissed regardless of the employee's request for, or taking of, FMLA leave")

but rather whether Mr. Podurgiel was entitled to reinstatement and ACME interfered with that right.[21]

---

[21] *See Conoshenti v. Public Service Electric & Gas Co.*, 364 F. 3d 135 (3d. Cir. 2004) (noting employer's intent irrelevant in FMLA claim).

    *Callison v. Philadelphia,* 430 F. 3d 117, 119 (3d Cir. 2005) ("An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA); *see also* Third Circuit Model jury instruction 10.1.1.

## FMLA Interference – Employer Intent Irrelevant

Because of the important rights the FMLA provides to eligible employees, the FMLA is a "strict liability" statute.[22] This means that if you find that ACME failed to immediately restore Mr. Podurgiel to his job upon Mr. Podurgiel being cleared to work, ACME's intent to violate Mr. Podurgiel's rights to reinstatement is immaterial. Thus, even if you find that ACME acted in good faith and through negligent or accidental conduct failed to timely return Mr. Podurgiel to his prior job, you must find for Mr. Podurgiel. For you to return a verdict for ACME, you would need to find that either Mr. Podurgiel was not qualified to take FMLA leave or that ACME timely returned Mr. Podurgiel to his job. ACME's intent is irrelevant.[23]

---

[22] *Williams v. Shenango, Inc.*, 986 F. Supp. 309, 317 (W.D.Pa. 1997)

[23] *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (no showing of discrimination is required for an interference, as that claim is made if the employee shows "that he was entitled to benefits under the FMLA and that he was denied them."); *Williams v. Shenango, Inc.*, 986 F. Supp. 309, 317 (W.D.Pa. 1997) (finding that "a claim under § 2615(a)(1) is governed by a strict liability standard"); *see also Hill v. City of New York*, 136 F. Supp. 3d 304, 342 (E.D.N.Y. 2015) ("The employer's intent is irrelevant to a FMLA interference claim") *citing Potenza v. City of New York*, 365 F.3d 165, 167 (2nd Cir. 2004) (holding analysis of intent immaterial to FMLA interference claims); *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1227 (10th Cir. 2012) (same); *Ballato v. Comcast Corp.*, 676 F.3d 768 (8th Cir. 2012) ("For a Family and Medical Leave Act (FMLA) interference claim, the employer's intent is immaterial"); Third Circuit Pattern Jury Instruction 10.1.1 (Interference with Right to Take Leave) (noting "Because the issue in interference claims is not discrimination but interference with an entitlement, courts have found that the plaintiff is not required to prove intentional misconduct").

# FMLA Damages — Back Pay

**(Model 10.4.1)**

If you find that ACME has interfered with Mr. Podurgiel's rights under the Family and Medical Leave Act, then you must determine the amount of damages that ACME actions have caused Mr. Podurgiel. Mr. Podurgiel has the burden of proving damages by a preponderance of the evidence.

You must award as actual damages an amount that reasonably compensates Mr. Podurgiel for any lost wages and benefits, taking into consideration any increases in salary and benefits, including pension, that Mr. Podurgiel would have received from ACME had Mr. Podurgiel rights not been violated.

You must award Mr. Podurgiel the amount of his lost wages and benefits during the period starting November 16, 2015 through December 29, 2015.

You must reduce any award of damages for lost wages and benefits by the amount of the expenses that Mr. Podurgiel would have incurred in making those earnings.

If you award damages for lost wages, you are instructed to deduct from this figure whatever wages Mr. Podurgiel has obtained from other employment during this period.  However, please note that you should not deduct social security benefits, unemployment compensation and pension benefits from an award of lost wages.

## General Instructions For Use At End of Trial — Deliberations

**(Model 3.1)**

When you retire to the jury room to deliberate, you may take with you these instructions, your notes and the exhibits that the Court has admitted into evidence. You should select one member of the jury as your foreperson. That person will preside over the deliberations and speak for you here in open court.

You have two main duties as jurors. The first one is to decide what the facts are from the evidence that you saw and heard here in court. Deciding what the facts are is your job, not mine, and nothing that I have said or done during this trial was meant to influence your decision about the facts in any way.

Your second duty is to take the law that I give you, apply it to the facts, and decide if, under the appropriate burden of proof, the parties have established their claims. It is my job to instruct you about the law, and you are bound by the oath that you took at the beginning of the trial to follow the instructions that I give you, even if you personally disagree with them. This includes the instructions that I gave you before and during the trial, and these instructions. All the instructions are important, and you should consider them together as a whole.

Perform these duties fairly. Do not let any bias, sympathy or prejudice that you may feel toward one side or the other influence your decision in any way.

As jurors, you have a duty to consult with each other and to deliberate with the intention of reaching a verdict. Each of you must decide the case for yourself, but only after a full and impartial consideration of all of the evidence with your fellow jurors. Listen to each other carefully. In the course of your deliberations, you should feel free to re-examine your own views and to change your opinion based upon the evidence. But you should not give up your honest convictions about the evidence just because of the opinions of your fellow jurors. Nor should you change your mind just for the purpose of obtaining enough votes for a verdict.

When you start deliberating, do not talk to the jury officer, to me or to anyone but each other about the case. During your deliberations, you must not communicate with or provide any information to anyone by any means about this case. You may not use any electronic device or media, such as a cell phone, smart phone, or computer of any kind; the internet, any internet service, or any text or instant messaging service; or any internet chat room, blog, website, or social networking service, to communicate to anyone any information about this case or to conduct any research about this case until I accept your verdict.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. Information that you might see on the internet or on social media has not been admitted into evidence and the parties have not had a chance to discuss it with you. You should not seek or obtain such information and it must not influence your decision in this case.

If you have any questions or messages for me, you must write them down on a piece of paper, have the foreperson sign them, and give them to the jury officer.  The officer will give them to me, and I will respond as soon as I can.  I may have to talk to the lawyers about what you have asked, so it may take some time to get back to you.

One more thing about messages.  Never write down or tell anyone how you stand on your votes.  For example, do not write down or tell anyone that a certain number is voting one way or another.   Your votes should stay secret until you are finished.

Your verdict must represent the considered judgment of each juror.  In order for you as a jury to return a verdict, each juror must agree to the verdict.  Your verdict must be unanimous.

A form of verdict has been prepared for you.  It has a series of questions for you to answer.  You will take this form to the jury room and when you have reached unanimous agreement as to your verdict, you will fill it in, and have your foreperson date and sign the form.  You will then return to the courtroom and your foreperson will give your verdict. Unless I direct you otherwise, do not reveal your answers until you are discharged. After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

Once again, I want to remind you that nothing about my instructions and nothing about the form of verdict is intended to suggest or convey in any way or manner what I think your verdict should be.  It is your sole and exclusive duty and responsibility to determine the verdict.

### General Instructions For Use At End of Trial — Number of Witnesses
**(Model 3.2)**

The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.

Respectfully submitted,

*/s/ Manali Arora*
Manali Arora, Esq.